**In re BARRISTER'S LAND COMPANY, INC., Debtor.**

**BARRISTER'S LAND COMPANY, INC.**

v.

**MERCHANTS & FARMERS BANK OF COLUMBUS, MISSISSIPPI and National Bank of Commerce of Mississippi.**

**Bankruptcy No. E85–10153.
Adv. No. 85–1206.**

United States Bankruptcy Court,
N.D. Mississippi.

Dec. 2, 1985.

Thomas L. Kesler, Sams & Kesler, Columbus, Miss., for Barrister's Land Co., Inc.

Stephen C. Edds, Gholson, Hicks & Nichols, Columbus, Miss., for Merchants and Farmers Bank of Columbus, Miss., and Nat. Bank of Commerce of Mississippi.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of the complaint filed by the Plaintiff, Barrister's Land Company, Inc., hereinafter referred to as Barrister's, against the Defendants, Merchants & Farmers Bank of Columbus, Mississippi, and National Bank of Commerce of Mississippi, hereinafter respectively referred to as M & F Bank and NBC; answers to said complaint filed by the Defendants; on consideration of the motions seeking to modify the automatic stay filed by M & F Bank and NBC, as well as, the motion to dismiss filed by NBC; responses to said motions filed by Barrister's; all parties being represented by their respective attorneys of record; on proof before the Court; and the Court having heard and considered same, finds as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. These adversary and contested matters are all core proceedings as defined in 28 U.S.C. § 157(b)(2)(A), (B), (O).

### II.

Pursuant to an agreed order, dated October 10, 1985, approved by all parties to this proceeding, each of these adversary and contested matters were consolidated for hearing.

Essentially, Barrister's is a real estate holding corporation whose sole assets are two office buildings located in the City of Columbus, Mississippi. Barrister's filed its voluntary Chapter 11 bankruptcy petition in this Court on April 10, 1985.

The two office buildings were occupied several years ago by the law firm of Burgin, Gholson, Hicks, and Nichols. At that time, there was free inside access between the two buildings, both of which were utilized by the law firm. Following the dissolution of the law firm partnership, the inside access between the two buildings was eliminated, so that for all practical purposes, the two buildings became independent of each other, although they are situated side by side. The western most building will be referred to as the "old building", and the eastern most building will be referred to as the "new building".

On January 5, 1978, Barrister's executed a promissory note in favor of National Bank of Commerce of Mississippi in the principal sum of $120,000.00, which was to be repaid in 120 monthly installments of $1,536.40, each. The note was secured by a deed of trust encumbering all of the real property owned by Barrister's. This note has been in default since November, 1984, and effective November 1, 1985, the amount of the indebtedness, including accrued interest and attorney's fees, was $69,630.63. (See Defendants' Exhibit 12).

On April 30, 1980, Barrister's executed a promissory note in favor of Merchants & Farmers Bank in the principal sum of $35,648.32, which was secured by a second deed of trust encumbering only the "new building". This note has been in default since February 15, 1985, and effective November 1, 1985, the amount of the indebtedness, also including accrued interest and attorney's fees, was $78,468.39. Interest accrues on this indebtedness at the rate of $22.83, per day, and accrues on the NBC indebtedness at the rate of $15.57, per day. (See Defendants' Exhibit 12).

In August, 1984, William G. Burgin, Jr., Vice President of Barrister's, approached Hampton Couchman, a Vice President at M & F Bank, with an offer to deed certain real property owned by Barrister's to M & F Bank in exchange for the following: (a) M & F Bank was to cancel and/or satisfy the Barrister's indebtedness owed to M & F Bank; and (b) M & F Bank was to service the Barrister's indebtedness owed to NBC until the debt was paid in full. At this time, Couchman was under the mistaken impression that the M & F Bank lien, like the NBC lien, encumbered both the "new building", as well as, the "old building". In this same context, Couchman testified that he thought the Barristers' offer, ex-

tended through Burgin, applied to all of the property owned by Barrister's which had formerly been utilized as the law offices for the Burgin, Gholson, Hicks, and Nichols firm. On the other hand, Burgin unequivocally testified that the offer applied exclusively to the "new building", which was the only property encumbered by the M & F Bank deed of trust. Couchman indicated that he would bring the offer before the bank's board of directors. In a letter dated September 14, 1984, (Plaintiff's Exhibit 4), M & F Bank agreed to take the "Barristers Land property", in what was apparently thought to be in conformity with Burgin's proposal. The letter also requested that a deed be prepared and delivered to the bank. On September 18, 1984, Burgin delivered a duly executed deed to Couchman at M & F Bank, encompassing only the "new building". As a result of an apparent verbal communication between Couchman and Burgin between September 14, 1984, and September 18, 1984, Couchman did not record the deed, but retained it in his possession until January 23, 1985. (See Plaintiff's Exhibit 6).

It is important to note at this point that the loan committee minutes for M & F Bank, dated August 28, 1984, (Defendants' Exhibit 13) tend to underscore Couchman's opinion that all of the Barrister's real property was to be conveyed to the bank. A paragraph in the minutes reflects the following pertinent language: "Approval was given for the Bank to accept deed from *Barrister Land Co.* for former *Burgin, Gholson, Hicks and Nichols* firm and assume payments at NBC provided all legal aspects are all right."

On September 19, 1984, Couchman, having realized that the deed delivered by Burgin only covered the "new building", rather than all of the Barrister's real property, immediately advised Ronald W. Tew, the President of M & F Bank, of this discrepancy. Following discussions with Tew, Couchman wrote Burgin a letter, dated September 19, 1984, (Plaintiff's Exhibit 7), stating that it was not the bank's understanding that Barrister's only wanted to convey one building; and if this was the case, that M & F Bank would require an assignment of the rents applicable to the "old building". Burgin testified at trial that this condition was not acceptable to Barrister's.

Although an assignment of rental income exists by virtue of the deed of trust held by NBC, contrary to its position that a binding contract was in effect with M & F Bank, Barrister's accepted and utilized all of the rental income generated by both buildings from September, 1984, until the present. During this same time frame, Barrister's attempted to sell the properties, and on March 1, 1985, leased a part of the "new building" to the Tennessee-Tombigbee Waterway Development Authority. (See Defendants' Exhibit 5). Additionally, subsequent to the Couchman letter of September 19, 1984, Barrister's attempted to borrow additional monies from M & F Bank to pay ad valorem taxes owed on the property, as well as, to service the NBC indebtedness. However on two occasions, (see Defendants' Exhibits 2 and 16), M & F Bank indicated that it was unwilling to lend additional monies to Barrister's.

### III.

Assuming, arguendo, that a valid contract existed between Barrister's and M & F Bank that satisfied the statute of frauds, the contract may be voidable because of mutual mistake as to the subject matter of the contract.

The Restatement of Contracts (2d) defines a mistake as "a belief that is not in accord with the facts." Restatement of Contracts (2d) § 151 (1981). § 152(1) specifically deals with mutual mistake and provides that:

(1) where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154. *Id.*

§ 154 of the Restatement of Contracts (2d) sets out circumstances when a party will bear the risk of a mistake, to-wit:

A party bears the risk of a mistake when

(a) the risk is allocated to him by agreement of the parties or

(b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so. *Id.*

In respect to § 152(b) of the Restatement of Contracts (2d), § 157 states that:

A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing. *Id.*

In comment (a) under § 152, three conditions must be met before a contract is voidable by an adversely affected party. "First, the mistake must relate to a 'basic assumption on which the contract was made'. Second, the party seeking avoidance must show that the mistake has a material effect on the agreed exchange of performances. Third, the mistake must not be one as to which the party seeking relief bears the risk." *Id.*

Mississippi is not without case law on the subject of mutual mistake. The case of *Powell v. Plant*, 23 So. 399 (Miss.—1898), held that it is "unquestionable" that mutual mistake will relieve the parties to a contract of the mutual obligations. In reaching this conclusion the court cited the case of *Nabours v. Cocke*, 24 Miss. 44 (1852), which held that "[equity] will grant relief where both parties enter into the contract under a mutual mistake in a material fact, and without which mistake the contract would not have been made." *Id.*

Perhaps a case most on point is *Allen v. Luckett*, 94 Miss. 868, 48 So. 186 (1909).

This case dealt with a vendor of real property who conveyed what he thought was 50 acres. In actuality, he had conveyed approximately 200 acres. The court, in rescinding the contract between the parties, held that "[i]f the terms are stated according to the intent of the parties, but there is an error *of one or both* in respect of the thing to which these terms apply—its identity, situation, boundaries, title, amount, value, and the like—then it is elementary that a court of equity may grant appropriate relief, provided the fact about which the mistake occurs was a material element in the transaction." (emphasis added) *Id.*, 48 So. at 187.

Another case dealing with mutual mistake is *Hollister v. Frellsen*, 148 Miss. 568, 114 So. 385 (1927). That case held that in order for a binding contract to be formed "the minds of the parties must meet upon a definite proposition and its acceptance as made." *Id.*, 114 So. at 386.

From the evidence presented in this trial, the Court is simply of the opinion that there was no "meeting of the minds" or mutual assent as to the terms of the contract. Neither party has alleged, nor attempted to prove, any deliberate misrepresentations. Succinctly stated, Couchman misunderstood the offer and Barrister's misunderstood the acceptance. There was never an acceptance by M & F Bank of the proposition offered by Burgin on Barrister's behalf. See *Hollister v. Frellsen*, supra., and *A. Copeland Enterprises v. Pickett & Meador, Inc.*, 422 So.2d 752 (Miss.—1982).

The quantity of the real property to be conveyed was clearly the "basic assumption" on which the contract was made and without a meeting of the minds on this matter, the parties each held a mistaken belief as to what the other intended to accept as consideration for the contract. Thus, the mistake had a material effect on the contract.

It is clear, also, that neither party accepted the risk of mistake, nor is it proper in these circumstances for the court to allocate the burden of risk. Neither party to

the attempted transaction sought to rely on limited knowledge, knowing that such knowledge was limited. Each party thought that it was acting with full knowledge of the facts.

As mentioned briefly hereinabove, the lack of good faith is certainly not an issue in this proceeding. The pleadings and the proof presented demonstrate without reservation that both parties acted in good faith, but with erroneous impressions as to the essential terms of the purported contract.

As pointed out hereinabove, Mississippi accepts the idea that parties to a contract can mutually misunderstand a material fact to such a degree that a contract is never formed. This acceptance of the concept of mutual mistake reiterates the idea that a sufficient meeting of the minds must occur before a contract can have a binding effect.

In this case, the Court finds that each of the parties was under the mistaken belief that the other had accepted its proposal which, in fact, was not the case. Only a few days had elapsed following the September 14, 1984, letter when the mistake became apparent to Couchman and M & F Bank. There was certainly no demonstrated harm or damage caused to Barrister's during this period. This is a Court of equity and equity will not permit this Court to find that a binding enforceable contract existed between Barrister's and M & F Bank under the existing factual circumstances. Consequently, the complaint filed by Barrister's will be dismissed at its cost.

## IV.

As set forth hereinabove, both NBC and M & F Bank filed motions seeking relief from the automatic stay so that they might be permitted to foreclose their respective deeds of trust. In a reorganization case such as this, a creditor seeking relief from the automatic stay must meet the requirements of 11 U.S.C. § 362(d), which provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

On Defendants' Exhibit 12, the debts owed to these two creditors, effective November 1, 1985, are set forth as follows:

MERCHANTS & FARMERS BANK OF COLUMBUS
(SINGLE PAY NOTE DATED FEBRUARY 15, 1984, DUE ON FEBRUARY 15, 1985—NO PRINCIPAL OR INTEREST REDUCTION)

| | |
|---|---|
| PRINCIPAL | $61,714.91 |
| INTEREST | 14,243.48 |
| ATTORNEY'S FEES | 2,510.00 |
| TOTAL | $78,468.39 |

INTEREST ACCRUES AT THE RATE OF $22.83 PER DAY

NATIONAL BANK OF COMMERCE OF MISSISSIPPI
(INSTALLMENT NOTE DATED JANUARY 5, 1978—MONTHLY PAYMENTS OF $1536.40 OWED FOR DECEMBER, 1984 THROUGH OCTOBER, 1985)

| | |
|---|---|
| PRINCIPAL | $61,445.31 |
| INTEREST | 7,043.28 |
| ATTORNEY'S FEES | 1,142.04 |
| TOTAL | $69,630.63 |

INTEREST ACCRUES AT THE RATE OF $15.57 PER DAY

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| MERCHANTS & FARMERS BANK OF COLUMBUS | $ 78,468.39 |
| NATIONAL BANK OF COMMERCE OF MISSISSIPPI | 69,630.63 |
| TOTAL | $148,099.02 |

Barrister's and the two secured creditors presented appraisal testimony applicable to both buildings which is summarized as follows:

A. The Barrister's appraisal was presented through James A. Lancaster, a licensed real estate broker, as follows:

(1) "new building", located at 518 Second Avenue North, Columbus, Mississippi: Cost Approach—$166,800.00

Income Approach—$238,900.00

Based on the cost and income approach figures, Lancaster indicated that the fair market value of the property, effective the date of his appraisal, was the sum of $175,000.00. (See Plaintiff's Exhibit 1).

(2) "old building", located at 516 Second Avenue North, Columbus, Mississippi: Income Approach Only—$60,200.00 (See Plaintiff's Exhibit 2).

B. The NBC and M & F Bank appraisal was presented through Rick Humphreys, an M.A.I. appraiser, who utilized the income approach exclusively, as follows:

(1) "new building", 518 Second Avenue North, Columbus, Mississippi: Income Approach—$130,000.00

(2) "old building", 516 Second Avenue North, Columbus, Mississippi: Income Approach—$35,000.00

As set forth hereinabove, the NBC deed of trust encumbers both buildings, while the M & F Bank deed of trust encumbers only the "new building". As additional security, the NBC indebtedness is guaranteed individually by the former partners in the Burgin, Gholson, Hicks, and Nichols law firm. Considering the lower appraisal figures and disregarding the individual guaranties, it is obvious that NBC is an over secured creditor whose interest is adequately protected. Although not in as favorable a position, considering once again the lower appraisal figures, M & F Bank enjoys an "equity cushion" at least for the present time. This is particularly true in view of the fact that NBC and M & F Bank are primarily the only creditors of Barrister's, and as such, the equity that might exist in the "old building" is available to satisfy any portion of the M & F Bank claim that might be deemed unsecured.

Since Barrister's has already expressed an indication that it wishes to divest itself of the "new building", this Court can envision several realistic possibilities that Barrister's might employ to successfully reorganize, retaining its ownership in just the "old building". Consequently, this Court finds that NBC and M & F Bank have not met the requirements mandated by 11 U.S.C. § 362(d). Therefore, the motions seeking relief from the automatic stay are not well taken and are hereby overruled. The Court is also of the opinion that the motion to dismiss filed by NBC is also not well taken and will be overruled at this time *without prejudice.*

Concerning the rental income assignment that is set forth in the NBC deed of trust, this Court directs Barrister's within thirty (30) days from the date of this Opinion to make an accounting to NBC for all rental income received since the filing of this bankruptcy case, as well as, any expenditures made from the rental income proceeds for expenses related to the maintenance and operation of the two buildings. All rental income generated from and after the date of this Opinion shall be deposited in a special escrow account to be opened and maintained at NBC. There shall be no further expenditures from this account until an order is obtained from this Court permitting Barrister's to use this cash collateral, as contemplated by the provisions

of 11 U.S.C. § 363(c)(2). Barrister's is further directed to formulate a plan of reorganization and file same with this Court, along with a disclosure statement, within thirty (30) days of the date of this Opinion. Failure to file said plan and disclosure statement shall result in this Court setting a hearing to show cause why this case should not be dismissed in its entirety. These instructions to Barrister's shall not be construed as extending the exclusivity period to Barrister's to file its disclosure statement and plan of reorganization, all as set forth in 11 U.S.C. § 1121(b).

An Order will be entered consistent with this Opinion.